**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANIEL CALHOUN,

    Plaintiff,   Case No. 10-15176
                                       Hon. Lawrence P. Zatkoff

v.

FORD MOTOR COMPANY,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 11, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross motions for entry of judgment [dkts 21 and 22]. Both parties have filed responses. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's motion [dkt 22] is DENIED, and Defendant's motion [dkt 21] is GRANTED.

**II. BACKGROUND**

This action involves a claim for retirement benefits by Plaintiff, a previous automotive employee of Defendant. Plaintiff alleges that he is eligible for benefits under Defendant's retirement plan, while Defendant asserts that, based on Plaintiff's years of service as an employee, he is not eligible for such benefits. The dispute centers on the calculation of Plaintiff's years of service with

Defendant. Plaintiff asserts that he has 42 years of service, as opposed to Defendant, who based Plaintiff's current retirement benefits on 29 years of service under Defendant's retirement plan. The retirement plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

**1.    FACTUAL BACKGROUND**

Plaintiff, Daniel Calhoun, started work with Defendant on March 3, 1965. Plaintiff worked as a Tool and Die Superintendent prior to his termination. In 1993, Plaintiff became disabled due to major depression and went on medical leave. While on medical leave, he began receiving disability benefits from Defendant's long-term disability ("LTD") claims processor, Unicare (his disability benefits continued until January of 2007). Plaintiff was also required to submit medical documentation to substantiate his medical leave and receipt of LTD benefits to Defendant and Unicare. In August of 1994, Plaintiff failed to submit the required medical documentation to Defendant. As a result, Defendant terminated Plaintiff as a "Voluntary Quit" on August 31, 2004.[1]

On October 31, 1994, Plaintiff applied for disability retirement (a benefit different from his LTD benefits) by contacting a representative at the National Employees Service Center for Ford ("NESC"), which processes Defendant's retirement benefits. He told the NESC representative that he may have been terminated, but the NESC representative who corresponded with Plaintiff during the conversation noted that his termination was not reflected on the system. Plaintiff's disability retirement application was approved. On December 14, 1994, NESC then realized that Plaintiff had been terminated as a voluntary quit on August 31, 1994. According to the administrative record, NESC informed Plaintiff that the approval was an error and mailed a denial letter stating such.

---

[1] While Defendant maintains that Plaintiff was terminated as of August 31, 2004, evidence in the record indicates that at one time a record system identified as "HRIMS" also listed two other quit dates for Plaintiff—November 6, 1994, and June 4, 1995.

Plaintiff did not appeal the denial of his application and proceeded to request withdrawal of his contributions from the retirement fund. The withdrawal of contributions was processed.

In November 2006, Unicare sent Plaintiff a letter advising him that his LTD benefits would end on January 30, 2007. The following month, Plaintiff called the NESC regarding an application for retirement benefits. The NESC representative informed Plaintiff he was only eligible for deferred vested retirement benefits based on the facts that he was 52 years old and had accumulated 29 years of service at the time of his termination in 1994. Plaintiff disputed the NESC representative's statements. The representative indicated to Plaintiff that he would review the file. After his file was reviewed, an NESC representative contacted Plaintiff and advised him that the representative's prior statements were correct. Plaintiff was only eligible for deferred vested benefits. Plaintiff responded that he would seek legal counsel regarding what he believed to be an incorrect termination date, but also wanted to complete an application for deferred vested retirement benefits.

In March of 2007, Plaintiff applied for deferred vested retirement benefits under Defendant's General Retirement Plan ("Plan"). Defendant's Retirement Committee ("the Committee") approved Plaintiff's application for Deferred Vested Retirement benefits in April 2007, and he began receiving monthly benefits (retroactive to February 1, 2007). Plaintiff's award of retirement benefits under the Plan was based upon 29 years of service. Plaintiff, however, contends that, at the time he applied for retirement benefits, he had over 42 years of service.

**2.    THE PLAN**

The Plan under which Plaintiff currently receives monthly retirement benefits, is a retirement plan that was instituted by Defendant for eligible employees. Defendant has the authority to control

and manage the operation and administration of the Plan. Under the Plan, Defendant has provided authority to a "Retirement Committee" which has the power to "administer the benefit structure of the Plan, and . . . construe the Plan."

The Plan offers several retirement benefits: Normal Retirement, Early Retirement, Disability Retirement, and Deferred Vested Retirement (a retirement benefit for non-active members). Normal Retirement, Early Retirement, and Disability Retirement share a common eligibility requirement. The employee must be an "active member" as defined under the Plan. According to the Plan, "active member" refers to an individual who is an employee of Defendant at the time of his or her application for retirement benefits. The Plan further defines "[e]mployed" to mean "enrolled on the active employment rolls of the Company"; "'employment' means the status of being so enrolled; and 'employee' means a person in employment." Contrary to being employed, "terminated" or "termination" "means removed from or removal from the active employment rolls for any reason other than death, retirement under the Plan, or removal to another active employment roll . . . while remaining in any employment by the Company."

As to the deferred vested retirement benefits that Plaintiff received beginning in 2007, the Plan states: "an active member who shall incur a break in the continuity of the member's service and (i) who then shall have five (5) or more years of credited service, shall be eligible, upon making due application therefor, to receive a non-contributory deferred vested retirement benefit[.]" The Plan further provides that an individual becomes eligible to withdraw his or her accumulated contributions from the retirement fund upon his or her termination, and if he or she meets the service requirements for vesting under the Plan.

**3.     PROCEDURAL BACKGROUND**

On November 30, 2010, Plaintiff commenced this action against Defendant. Plaintiff seeks damages for Defendant's breach of the Plan, including damages for loss of earnings, the value of his fringe benefits, mental and emotional distress, and consequential damages in an amount in excess of $25,000. Defendant removed the action from the Wayne County Circuit Court to this Court and filed the administrative record regarding Plaintiff's claim with the Court. On April 21, 2011, Defendant filed a motion requesting that the Court limit its review of Plaintiff's claim to the administrative record that was before the Committee at the time of its decision to approve Plaintiff for deferred vested retirement benefits. The parties fully briefed the motion and the Court issued a written opinion and order. In resolving the motion, the Court noted that the parties did not dispute that the Plan is an ERISA plan and held that Defendant's decision to approve Plaintiff for retirement benefits would be reviewed under an arbitrary and capricious standard of review. The parties then filed the instant motions in compliance with the Court's ordered briefing schedule.

### III. STANDARD OF REVIEW

29 U.S.C. § 1132(a)(1)(B) allows a plaintiff to recover benefits due under an employee benefit plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan, courts review the plan administrator's decision under an "arbitrary and capricious" standard of review. *See Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 2005) (citing *Bruch*, 489 U.S. at 115).

Since the Court held in its June 20, 2011, opinion and order, that the Plan provided the Committee discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, the Court reviews Defendant's determinations under an arbitrary and capricious standard. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation and internal quotation marks omitted), cert. denied, 495 U.S. 905 (1990). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* at 693 (citation and internal quotation marks omitted). In determining whether Defendant's actions regarding Plaintiff's benefits were arbitrary and capricious, the Court will conduct its review based solely upon the administrative record and "render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998).

## IV. ANALYSIS

As a preliminary matter, Plaintiff's Complaint asserted claims for common law breach of contract and fraud. The Court is reviewing Plaintiff's claims as claims under ERISA because: (1) the parties conceded that ERISA controlled Plaintiff's legal claims in this action while briefing Defendant's prior motion; and (2) Plaintiff frames his arguments in his briefing as claims for breach of contract and fraud in violation of ERISA.

Having determined that ERISA law controls, the Court turns to the parties' substantive arguments. Defendant has requested a judgment affirming its administrative decision to award Plaintiff deferred vested retirement benefits based on 29 years of service. On the other hand, Plaintiff seeks a judgment overturning Defendant's decision. Plaintiff sets forth three grounds as

to why Defendant's decision should be overturned. The Court will address each of Plaintiff's grounds below.

**1.   WHETHER 29 YEARS OF SERVICE IS CORRECT**

Plaintiff asserts several arguments as to why the August 31, 1994, voluntary quit date is incorrect. Plaintiff first argues that if the August 1994 quit date is correct, he was not entitled to receive LTD benefits. Yet, he did receive the benefits until 2007. Plaintiff also asserts that if Defendant had sufficient medical documentation to continue to pay LTD benefits until 2007, Defendant improperly terminated him as of August 2004 for not submitting medical documentation. Plaintiff further points to two other alleged quit dates—November 6, 1994, and June 4, 1995—in the administrative record. Plaintiff argues that the multiple quit dates in the record support a finding that the Committee's decision to rely on the August 31, 1994, quit date was arbitrary.

Defendant responds that it is irrelevant that Plaintiff continued to receive LTD benefits after his termination in August 1994. Defendant asserts that Plaintiff only continued to receive such benefits because Defendant failed to provide accurate information to Unicare, its LTD claims processor. Defendant also asserts that Plaintiff's receipt of LTD benefits is distinct from Plaintiff's right to receive retirement benefits under the Plan.

In reviewing the administrative record and considering the parties' arguments, Plaintiff's arguments are without merit. First, Plaintiff does not dispute that he was required to submit medical documentation to Defendant and Unicare, and that he failed to provide such documentation to Defendant. As a result, Plaintiff was terminated in August of 1994.

Second, Plaintiff's argument that Defendant had sufficient medical documentation to pay LTD benefits until 2007 is irrelevant to receipt of his retirement benefits. Plaintiff was required to

submit medical documentation to both Defendant and Unicare, who processes Defendant's LTD benefit claims. Continued receipt of the LTD benefits in error, however, does not establish that the August 31, 1994, quit date is incorrect or that Defendant's use of the date to calculate Plaintiff's retirement benefits was unreasonable. Furthermore, while Plaintiff erroneously continued to receive LTD benefits due to a lack of communication between Defendant and Unicare, there is no legal authority or language in the Plan that supports Plaintiff's argument that he is entitled to additional *retirement* benefits based on receipt of his LTD benefits.

Third, Plaintiff's argument regarding two other purported quit dates in the administrative record is unpersuasive. While several notations by NESC representatives indicate two other possible quit dates, there are multiple references and documentation to support Plaintiff's voluntary termination being August 31, 1994. Nothing in the record indicates that Plaintiff's correct termination date is not August 31, 1994, or that Defendant arbitrarily and capriciously calculated Plaintiff's years of service as 29 years by relying on the August 1994 quit date. And, Plaintiff cites to no documentation in the record other than the NESC representatives notes that would establish either November 6, 1994, or June 4, 1995, as the correct quit date. Plaintiff further fails to explain and support how his alleged years of service should be 42 years rather than 29 years of service. The record is absent of evidence that Plaintiff was an "active employee" in 2007, *i.e.*, 42 years from his start date of 1965.

After reviewing the administrative record, the Court concludes that Defendant's determination that Plaintiff had 29 years of service was rational in light of the Plan's provisions and evidence in the record. Accordingly, the Court finds that Defendant's interpretation was not arbitrary and capricious.

## 2. FALSE REPRESENTATIONS REGARDING PLAINTIFF'S BENEFITS

Plaintiff also maintains that Defendant made several false representations to Plaintiff concerning his benefits. Plaintiff relies on two notes in the administrative record—a note made on December 13, 2006, and a note made on February 3, 2007. The notes in Plaintiff's file were made by a NESC representative. In the 2006 note, a representative informed Plaintiff that he could only apply for deferred vested retirement benefits due to his August 1994 termination. Plaintiff threatened to sue and the representative instructed Plaintiff that he would review the case and call Plaintiff back. In the 2007 note, a NESC representative recorded that while "SCOPUS", a record keeping system, indicated a quit date of August 31, 1994, the "HRIMS" system also had two other quit dates (November 6, 1994, and June 4, 1995).

Plaintiff argues that, based on these notes, Defendant made false representations to Plaintiff by failing to tell him that two other alleged quit dates existed in the administrative record. Plaintiff also asserts that Defendant failed to inform Plaintiff that he would be ineligible for disability retirement benefits because he was classified as a quit. Plaintiff further asserts that nothing in the record establishes why Plaintiff continued to receive LTD benefits for 13 years after his alleged quit date.

According to ERISA, the law imposes fiduciary duties upon administrators of an ERISA plan. 29 U.S.C. § 1104(a)(1). One such duty is that the administrator "must give complete and accurate information in response to participants' questions." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992); *accord Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451 (6th Cir. 1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."). An administrator's

misrepresentation is material "if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

Plaintiff's assertions that he was misled by Defendant regarding his termination and benefits are unsupported by the record. First, Defendant never gave inaccurate or incomplete information to Plaintiff in response to any of Plaintiff's requests. There is no evidence in the record that Plaintiff inquired or pursued any action as to why Defendant had classified him as a voluntary quit in 1994 or the effect of his termination on his retirement benefits. Thus, there is no evidence that Defendant breached its duty to provide accurate information to Plaintiff's inquiries. *See Drennan*, 977 F.2d at 251. The record actually demonstrates that Plaintiff relied on his termination to withdraw his contributions from the retirement fund. According to the record, after Plaintiff was informed in December of 1994 of the August 31, 1994, quit date, he proceeded to withdraw his contributions from the retirement fund. Under the Plan, Plaintiff was not eligible to withdraw his contributions unless he had been terminated. Therefore, Plaintiff's own actions indicate he was aware of the benefits he was entitled.

Even if any inaccurate statements were made, such statements were not material because there is no likelihood that the statements would have misled a reasonable employee in pursuing disability benefits. In October of 1994, Plaintiff was erroneously approved for disability retirement benefits. In December of 1994, Defendant, however, then notified Plaintiff that his approval was erroneous and he was not eligible for such benefits because of Plaintiff's voluntary termination date. Plaintiff, therefore, was aware as early as December 14, 1994, that he was classified as a voluntary quit and thus, was ineligible for disability retirement benefits. A reasonable employee would realize

after the contact from Defendant in 1994 that his or her status as a terminated employee limited certain retirement benefits. *See Krohn*, 173 F.3d at 547. The fact that Plaintiff failed to inquire any further may not be attributed to Defendant as a false representation about Plaintiff's benefits under the Plan.

As to the confusion in the record regarding Plaintiff's quit date, the other evidence in the record supports the fact that Plaintiff was terminated on August 31, 1994. Furthermore, despite Plaintiff's contention, the record also indicates why Plaintiff continued to receive LTD benefits even though he had been classified as a voluntary quit as of August 31, 2004. An NESC representative noted that "[b]ased on all of the file confusion" it appears that "information regarding the termination was not received by Unicare in 1994." And, an inquiry regarding Plaintiff's file sent by a NESC representative to Unicare was sent to a person that was no longer employed by Unicare. Thus, the administrative record does explain why Unicare continued to pay Plaintiff LTD benefits even though he had been terminated.

Accordingly, the Court finds Plaintiff's arguments unpersuasive, and there is no evidence in the record that Defendant made false representations regarding Plaintiff's benefits.

**3.    WHETHER DEFENDANT MADE A DENIAL OF BENEFITS**

Next, Plaintiff argues that Defendant failed to provide a denial of benefits in writing with the reasons for the denial, including specific plan provisions and any other additional evidence relied on, and the process for appealing the decision. Plaintiff supports his position by citing to ERISA. Under ERISA, an adverse benefit determination must be in writing and must include the specific reason for the denial; the specific plan provisions on which the denial is based; a description of any additional evidence or information necessary for the claimant to perfect the claim; and information

regarding the steps for appeal. 29 U.S.C § 1133; *see also* 29 U.S.C. § 1135; 29 C.F.R. 2560.503-1(f).

While Plaintiff's legal authority is on point, Plaintiff's argument is fatally flawed. Nothing in the administrative record indicates that Plaintiff's application for deferred vested retirement benefits was denied. Rather, Plaintiff submitted an application for deferred vested retirement benefits, which Defendant approved. Defendant awarded Plaintiff deferred vested retirement benefits based on 29 years of service. Presently, Plaintiff is receiving the benefits. Thus, Plaintiff misconstrues his award of deferred vested retirement benefits as a denial of other retirement benefits he asserts he is eligible for, such as healthcare and life insurance. These benefits, however, are not a component of deferred vested retirement benefits, and Plaintiff fails to point to any language in the plan that would entitle him to such benefits. Thus, because there was no denial, the cited legal authority is inapplicable, and Defendant was not required to provide any of the documentation required under ERISA.

**4. CONCLUSION**

After review of the record and addressing the arguments specifically raised by Plaintiff, the Court concludes that Defendant's decision to award Plaintiff deferred vested retirement benefits was not arbitrary and capricious. It is undisputed that Plaintiff was hired on February 3, 1965, and that Plaintiff did not return to work after August 31, 1994. Plaintiff also does not dispute that he was required to submit medical documentation to Defendant as well as Unicare, which he failed to do. Thus, Defendant classified Plaintiff as a voluntary quit. It was not unreasonable for Plaintiff's award of retirement benefits to be based on the August 31, 1994, termination date, thus accumulating 29 years of service.

Further, Plaintiff does not set forth any other type of benefits he was entitled to under the Plan. According to the Plan, only active members are entitled to Normal, Early, or Disability retirement. Since Plaintiff was terminated in August of 1994, he was not an active member at the time he applied for retirement benefits in 2007. Rather, as Defendant reasonably concluded, Plaintiff was entitled to deferred vested retirement benefits.

As the Plan states with respect to deferred vested retirement benefits, "an active member who shall incur a break in the continuity of the member's service and (i) who then shall have five (5) or more years of credited service, shall be eligible, upon making due application therefor, to receive a non-contributory deferred vested retirement benefit[.]" The Committee reasonably applied the deferred vested retirement plan language: (1) Plaintiff had a break in his service once he was terminated; (2) he had more than 5 years of service (29 years); and (3) he submitted an application in 2007. Defendant's decision to award deferred vested retirement benefits based on Plaintiff's 29 years of service was not arbitrary and capricious.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendant's motion for entry of judgment [dkt 21] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for entry of judgment [dkt 22] is DENIED, and judgment will enter accordingly.

IT IS SO ORDERED.

                                        S/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated: January 11, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 11, 2012.

S/Marie E. Verlinde
Case Manager
(810) 984-3290
